# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of: | ) | |
| | ) | |
| Two Facebook accounts associated with D'Andrae K. | ) | Case No. __18 - 936 M (NJ)__ |
| Robinson and one Facebook account associated with Tariona | ) | |
| Brown | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Section 1951(a) and of Title 18, United States Code, Section 371

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

TFO Matthew Gibson, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _September 21, 2018_

_____
*Judge's signature*

City and State: _Milwaukee, Wisconsin_

Honorable Nancy Joseph , U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Gibson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user IDs that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.    I have over 26 years of experience as a law enforcement officer and am currently assigned to the Milwaukee FBI Violent Crime Task Force as a Deputized Federal Task Force Officer. I was a Special Agent with the Federal Bureau of Investigation for over 23 years and have been an Investigator with the Milwaukee County District Attorney's Office since June of 2015. I have participated in numerous complex narcotics, money laundering, violent crime, armed bank robbery, and armed commercial robbery investigations in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 924(c), 1951, 1956, 1957, 2113, and other related offenses. I have employed a wide variety of investigative techniques in these and

other investigations, including but not limited to, the use of informants, wiretaps, cooperating defendants, recorded communications, search warrants, surveillance, interrogations, public records, DNA collection, and traffic stops. I have also received formal training regarding the same. As a Federal Task Force Officer, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. This affidavit is based upon my personal knowledge as well as information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

4. Because this affidavit is submitted for the limited purpose of securing authorization for a criminal complaint and arrest warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish probable cause.

5. Based upon the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1951(a) (armed Hobbs Act robbery) and conspiracy to commit armed Hobbs Act robberies in violation of Title 18, United States Code, Section 371 have been committed by D'Andrae ROBINSON aka Dandrae K. ROBINSON. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

6.     More specifically, I seek authorization to search Facebook's information associated with D'Andrae K. ROBINSON and Tariona Brown:

| NAME | FACEBOOK IDENTIFICATION - UID | FACEBOOK NAME |
|---|---|---|
| D'Andrae K. ROBINSON | 100025142897511 | "LilDre ROBINSON" |
| D'Andrae K. ROBINSON | 100004077396033 | "LilDre ROBINSON" |
| Tariona Brown | 100004920090632 | "Tariona Jones" |

## PROBABLE CAUSE

7.     On March 8, 2017 at approximately 9:25 p.m., three black males, two of which were armed with handguns, robbed the Walgreens located at 4730 S. 27th St., Milwaukee, Wisconsin.   Two of the armed robbers jumped the pharmacy counter, handed the pharmacist a demand note, and stole several bottles of various narcotics.   The third robber acted as a lookout.

8.     On March 10, 2017 at approximately 1:10 a.m., one black male armed with a handgun robbed the Walgreens located at 3701 S. Howell Ave., Milwaukee, Wisconsin.   The armed robber jumped over the pharmacy counter and told the pharmacist to open the safe containing Percocets and Tussionex.   Due to a time delay on the safe, the armed robber did not obtain items from inside the safe and instead, stole various bottles of narcotics located on the counter.   The armed robber then ordered the pharmacist to open the cash register and he stole $70 from the cash drawer.

9.     On March 10, 2017 at approximately 11:35 p.m., two black males, one of which was armed with a handgun, robbed the Walgreens located at N83W15701 Appleton Ave, Menomonee Falls, Wisconsin.   One of the armed robbers jumped over the

pharmacy counter and pointed a handgun at the pharmacist. The second robber then jumped over the pharmacy counter and the robbers ordered the pharmacist to open the safe. After the pharmacist complied with their demands, the robbers stole various bottles of narcotics from the safe and then fled the store.

10. At all relevant times, the three aforementioned Walgreens were engaged in the sale of articles and commodities in interstate commerce.

11. A review of the surveillance footage of the robbers casing and/or robbing the Walgreens pharmacies revealed that the same group of subjects were involved in all three of the above-described armed robberies. None of the robbers in the three above-described armed pharmacy robberies wore masks or had their faces covered.

## A. Identification of Subjects

12. Review of surveillance footage from the armed robbery of the Walgreens located at 3701 S. Howell Avenue on March 10, 2017 also revealed a getaway vehicle (black Chevrolet Conversion van) used by the armed robbers. The black Chevrolet Conversion van had white decals down the sides of the van. The van also had a mismatched driver rear rim. Law enforcement was able to identify the last three digits on the license plate as "290." According to the Indiana Bureau of Motor Vehicles, a black 2004 Chevrolet Express 1500 with Indiana license plate number XGV-290 is registered to Shirley Finch in Indianapolis, Indiana. Julius Finch is the son of Shirley Finch.

13. On March 7, 2017, at approximately 11:19 p.m., Julius Finch checked into the Motel 6 located at 1201 W College Ave, Oak Creek, WI. Julius Finch checked out of the Motel 6 sometime the morning of March 8, 2017. Finch provided his Indiana driver's

license at the time of check in and his driver's license was photocopied by Motel 6 staff. The driver's license and check-in documents at the Motel 6 reveal that Finch used the address of 4601 Guilford, Indianapolis, IN, 46205. During a review of the Motel 6 surveillance video, Julius Finch and three other unidentified black males, two of which were subsequently identified as Devin Jefferson and Tracy Hollowell, were observed entering a black Chevrolet van with white decals down the sides of the van and a mismatched driver's side rear rim, that was later used as the getaway vehicle in the Howell Avenue robbery.

14.    A person who wishes to remain anonymous and is familiar with Shirley and Julius Finch was shown photographs of the black Chevrolet van observed in the Motel 6 surveillance footage. The person confirmed that the van belonged to Shirley Finch. The person was shown a photograph of Julius Finch and confirmed that Julius Finch was Shirley's son, and that Julius lived with his mother. The person also told law enforcement that the Finches now live at 9661 Gemini Rd., Indianapolis, IN.  On March 21, 2017, law enforcement observed a black 2017 Chevrolet Impala with Indiana license plate #FL598AAX parked in the driveway of 9661 Gemini Rd., Indianapolis, IN. According to Enterprise, Julius Finch rented a black 2017 Chevrolet Impala with Indiana plate FL598AAX on February 2, 2017. The rental was due back to Enterprise on March 23, 2017. Julius Finch provided the phone numbers 317-960-9757 and 317-923-3828 to Enterprise.

15.    Hotel records also reveal that Finch checked into the Red Roof Inn 6360 S. 13th Street, Oak Creek, WI on March 8, 2017, and departed on March 11, 2017.

Subpoenaed hotel records further reveal that Finch checked into the Comfort Suites Hotel, 10831 Park Place, Milwaukee, WI, on March 10, 2017, and departed on March 11, 2017. Finch provided the address of 4601 Guilford, Indianapolis, IN, 46205, and phone number 317-493-6157. Finch paid for the room with a credit card, which was subsequently seized from Finch's property at the Regional Jail and Correctional Facility, South Central Regional Jail, 1001 Centre Way, Charleston, West Virginia, where Finch is in custody for the armed robbery of a pharmacy.

16.     On May 6, 2017, the CVS Pharmacy, 885 Oakwood Road, Charleston, West Virginia, and its customers were robbed at gunpoint by three subjects. The subjects obtained medications and the personal property of individuals in the store and were seen fleeing in a black van. The black van was subsequently traffic stopped and Julius Finch, Darryl Harvey, Marquis Smith, and James Brown were arrested. James Brown subsequently admitted that they were involved in the armed robbery of the CVS Pharmacy in Charleston, West Virginia on May 6, 2017. All four subjects have pled guilty to his involvement in that armed pharmacy robbery. Harvey is also a suspect in armed pharmacy robbery in Pelham, AL on April 20, 2017, during which the subjects jumped over the pharmacy counter, demanded drugs, brandished handguns and one subject sexually assaulted an employee. Harvey's fingerprints were recovered at the scene of that armed robbery.

17.     The Wisconsin Regional State Crime Laboratory (WRSCL) recovered DNA from the duffle bag dropped during the South 27th Street robbery and developed a profile, which was entered into CODIS. When the DNA was entered into CODIS, there were no

positive hits for the DNA recovered from the duffle bag. On May 7, 2018, the WRSCL sent a report stating that the DNA profile recovered from the duffle bag was a match to a DNA profile of an unknown person which was recovered by Park Forest, Illinois Police Department in April of 2017. Case agents contacted Detective Justin Rimovsky of the Park Forest Police Department who advised that he had recovered a jacket during the investigation of a nonfatal shooting that occurred in April of 2017. Detective Rimovsky stated that he had submitted a jacket for DNA analysis to the Illinois Crime Laboratory; that a profile was developed from the DNA recovered from the jacket; and that, although there no positive hits at the time, the unknown profile was entered into CODIS. Detective Rimovsky advised case agents that D'ANDRAE ROBINSON was developed as a suspect in the nonfatal shooting.

18.    Case agents determined that ROBINSON was in custody in the Indianapolis area on unrelated homicide charges. Special Agent Leonard Rothermich of the FBI Indianapolis Indiana Field Office provided case agents with a digital color mugshot of ROBINSON, taken by Indianapolis Metropolitan Police Department in July of 2017.    Case agents viewed this photograph and immediately recognized that ROBINSON appeared to be the suspect who dropped the duffle bag during the South 27th Street armed robbery based upon their review of surveillance video recovered from the Walgreens on March 8, 2017 and other surveillance videos.

## B. Witness Identifications

19.    Case agents displayed photo arrays of Hollowell and Jefferson, and to witnesses to the above-described armed robberies of pharmacies in the Milwaukee area.

Jefferson and was identified as one of the gunmen in armed robbery of the Walgreens located at 4730 S. 27th Street, Milwaukee WI on March 8, 2017 and the gunman in the armed robbery of the Walgreens located at N83 W15701, Appleton Avenue, Menomonee Falls, WI on March 10, 2017. Hollowell was identified as casing the Walgreens located at 2730 South 27th Street and identified as being the lookout during the armed robbery of the Walgreens located at 2730 South 27th Street Milwaukee, WI. Hollowell was also identified as participating in the casing of the Walgreens located at 3701 S. Howell Ave., Milwaukee, WI prior to the armed robbery on March 10, 2017.

20.     After obtaining the mugshot of ROBINSON, a photo array containing ROBINSON's photo was displayed to the victim pharmacists of the armed robbery of the Walgreens located at 4730 S. 27th Street, Milwaukee, WI on March 8, 2017 and of the Walgreens located at N83 W15701, Appleton Avenue, Menomonee Falls, WI on March 10, 2017. Both pharmacists positively identified ROBINSON as a gunman in the respective robberies.

21.     On August 21, 2018, case agents interviewed Tariona Lajoy Brown at the Indiana Women Prison located in Indianapolis, Indiana. Brown is serving a sentence for burglary and is awaiting sentencing in a homicide case, in which D'Andrae ROBINSON is a co-defendant. Brown has been cooperating in that case and is expected to testify against ROBINSON in the homicide case. Brown agreed to be interviewed by case agents regarding ROBINSON and review surveillance video. Brown was shown surveillance video from the Motel 6, McDonalds, and Menomonee Falls Walgreens and identified D'Andrae ROBINSON in each video, particularly identifying ROBINSON as a gunman

in the Menomonee Falls Walgreens armed robbery. Brown stated that she attended high school with ROBINSON and has known him for a few years. Brown stated that ROBINSON told her that he was robbing pharmacies for narcotics in other states, but ROBINSON had not specifically mentioned robbing pharmacies in Wisconsin. Brown stated that ROBINSON had asked her to drive him to other states, but that she had declined. Brown stated that in March or April of 2017, ROBINSON bragged that he had hit a "big lick," which she understood to mean a robbery, and was flush with cash. Brown stated that ROBINSON used the cash to buy expensive clothes and a car.

22. Brown told case agents that ROBINSON is a drug dealer, and that to avoid law enforcement, ROBINSON switches cellular telephone numbers frequently. Brown stated that ROBINSON always carried a flip style cellular telephone for his drug dealing. Brown stated that she saw ROBINSON with smart phones as a secondary device, but that ROBINSON often rotated the devices, swapping one device for another and changing telephone numbers frequently. Brown stated that she frequently communicated with ROBINSON using Facebook's messaging applications and that ROBINSON commonly sent his latest cellular telephone number to her via Facebook messenger. Brown identified her Facebook account as "Tariona Jones" and ROBINSON's as "LilDro ROBINSON." Brown stated that periodically, ROBINSON would slightly alter his profile name and as an example gave, "LilDro" to "LilDre ROBINSON." Brown stated that she knew the Facebook account was still his as he would still have the same pictures and historical time line.

23. Case agents later located publicly viewable Facebook profiles, "Tariona Jones", Facebook ID# 100004920090632 and "LilDre ROBINSON," Facebook ID# 100025142897511. Case agents observed the profile avatar for "Tariona Jones" was a color image of a woman who appeared identical to Tariona Brown and the profile avatar for "LilDre ROBINSON" was a color image of a man who appeared identical to D'Andrae ROBINSON. Additionally, Indianapolis Homicide Detective Steven Gray identified "LilDre ROBINSON", Facebook ID# 100004077396033 as another account of ROBINSON, records of which he secured with a search warrant. Detective Gray provided those records to Milwaukee Police Officer Litwin, who observed the records reflect the account was created on July 13, 2012 and was deactivated the day of ROBINSON's arrest for the homicide in Indianapolis, October 25, 2017, and then reactivated on November 3, 2017.

24. Affiant is aware of the common use of Facebook by criminal suspects and has examined or been involved in investigations where examinations have occurred concerning hundreds of Facebook account profiles secured with the authority of search warrants or consent. Affiant has personally made or been made aware of numerous recurring observations, made with such repeated consistency for Affiant to have come to believe them to be significantly more probable than improbable. Those observations include the commonality of suspects disclosing their pre-pay and nameless cellular numbers in private wall posts and text messaging. Affiant is also aware of the commonality of criminal suspects to use the private messaging in furtherance of their criminal activity such as the liquidation of robbery loot, trade, rent or borrow vehicles used in robberies, boasting of the commission of robberies, and disclosing their most

current lodging arrangements. Further, Affiant is aware that criminal suspects often upload images and video of themselves and their co-actors wearing clothing worn in the commission of the robberies and casing visits as well as weapons and vehicles used in the crimes and of robbery loot obtained from those criminal endeavors.

25.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

26.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

27.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view

information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

28.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

29.     Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

30.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

31.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

32.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

33.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well

as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

34. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

35. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

36. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

37. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

38. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

39. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

40. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

41. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

42. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account

number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

43. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the

crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

45. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications and location data) particularly described in Section I of Attachment B. Upon receipt of the information

described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

46. I submit there is probable cause to believe that the Facebook accounts of D'Andrae ROBINSON and Tariona Brown may contain evidence including but not limited to, location data, communication with co-conspirators, the mobile telephone numbers used by D'Andrae ROBINSON during the timeframe of the Walgreen robberies in Milwaukee and Menomonee Falls, Wisconsin in March 2017, images of ROBINSON with his co-conspirators, images of ROBINSON wearing clothing he was observed wearing in surveillance videos and firearms used in the robberies, and communication between ROBINSON and others related to the aforementioned Walgreens robberies.

47. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States in the Eastern District of Wisconsin that has jurisdiction over the offense being investigated based upon the aforementioned evidence, there is probable cause to believe that D'andrae ROBINSON violated Title 18, United States Code, Section 1951(a) (Hobbs Act Robbery), and conspired with others to commit armed Hobbs Act robberies in violation of Title 18, United States Code, Section 371.

48. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## ATTACHMENT A

### Property to Be Searched

1.    This warrant applies to information associated with the following Facebook

Accounts: associated with D'Andrae K. ROBINSON and Tariona Brown:

| NAME | FACEBOOK IDENTIFICATION - UID | FACEBOOK NAME |
|------|-------------------------------|---------------|
| D'Andrae K. ROBINSON | 100025142897511 | "LilDre ROBINSON" |
| D'Andrae K. ROBINSON | 100004077396033 | "LilDre ROBINSON" |
| Tariona Brown | 100004920090632 | "Tariona Jones" |

that is stored at premises owned, maintained, controlled, or operated by Facebook

Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Particular Things to be Seized**

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including for users D'Andrae K. ROBINSON, with user identification number 100025142897511 and 100004077396033 Tariona Brown with user identification number 100004920090632: full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the accounts and all other documents showing the users' posts and other Facebook activities;

(c)     All photos and videos uploaded by those user IDs and all photos and videos uploaded by any user that have either of those users tagged in them;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the users, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the accounts;

(h)     All records of the accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the users "liked";

(i)     All information about the Facebook pages that the accounts are or were a "fan" of;

(j)     All past and present lists of friends created by the accounts;

(k)     All records of Facebook searches performed by the accounts;

(l)     All information about the users' access and use of Facebook Marketplace;

(m)     The types of service utilized by the users;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the users' Facebook accounts, including contacts with support services and records of actions taken.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 1951(a) (armed Hobbs Act robbery) and conspiracy to commit armed Hobbs Act robberies in violation of Title 18, United States Code, Section 371 involving Julius Finch, Darryl Harvey, Tracy Hollowell, Devin Jefferson, and D'Andre since January 1, 2017, for each user ID identified on Attachment A, including but not limited to, information pertaining to the following matters:

(a)     Communications between known subjects.     Communications between known subjects and unknown subjects, including communications with Tariona Brown, aka Tariona Jones.     Pictures of clothing and gun used during armed robbery.   Preparatory steps taken in furtherance of the armed robberies and communications regarding sale of pills or other drugs.

(b)    Communications related to photos/attachments. Communications related to travel. Communications related to dates.

(c)    Evidence indicating how and when the Facebook accounts were accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owners;

(d)    The identity of the person(s) who created or used the user IDs, including records that help reveal the whereabouts of such person(s).

(e)    The identity of the person(s) who communicated with the user IDs 1164180123 and 1022184299 regarding matters relating to the aforementioned violations of the United States Code.